IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SANFORD KEITH AMEY and REGINA CARTER-AMEY | § § § § | |
| vs. | § | Civil Action  6:17-CV-42 |
| | § § § § | |
| MICHELIN NORTH AMERICA, INC. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiffs herein, SANFORD KEITH AMEY and REGINA CARTER-AMEY and file this Plaintiffs' Original Complaint complaining of Michelin North America, Inc., ("MNA") Defendant herein, and would respectfully show unto the Court as follows:

### I.   DISCOVERY TRACK

1.1   Plaintiffs aver that this lawsuit should be conducted under a Level 3 Discovery Control Plan due to the nature of the case, the magnitude of the damages involved, and the number of parties and witnesses involved.

### II.   PLAINTIFFS

2.1   Plaintiff Sanford Keith Amey is a citizen of the State of Texas and is a resident of Corpus Christi, Nueces County, Texas.

2.2   Plaintiff Regina Carter-Amey is a citizen of the State of Texas and a resident of Corpus Christi, Nueces County, Texas.

### III.   DEFENDANT

3.1   Defendant Michelin North America, Inc. ("MNA") has previously appeared in and defended one or more lawsuits in Texas containing allegations that a tire manufactured by Defendant MNA was defective and caused personal injury or death. At all material times, Defendant MNA was engaged in the design, manufacture, marketing, sale and distribution of tires, including the defective Michelin LTX M/S (MTD) made the basis of this lawsuit. Defendant MNA is thus the "manufacturer" of the subject tire within the meaning of Tex. Civ. Practice & Remedies Code § 82.001(4). After its manufacture, Defendant MNA released the defective subject tire into the stream of commerce with the intent to serve the Texas market. The defective subject tire at issue in this cause of action, the Michelin LTX M/S (MTD) LT 285/75R16 bearing DOT # B7KC PAMX 1704, was sold and purchased in the State of Texas. By such action, Defendant MNA became liable under the doctrine of strict liability in tort for any defects in the subject tire arising out of the design, manufacture or marketing of the subject tire. MNA is a New York Corporation with its principal place of business in South Carolina. MNA may be served with process CT Corp System, at 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3236. Service will be by certified mail, return receipt requested. **SERVICE OF PROCESS IS REQUESTED AT THIS TIME.**

### IV.   JURISDICTIONAL FACTS

4.1   Defendant MNA manufactured the subject tire.

4.2   Defendant MNA designed the subject tire.

4.3   Defendant MNA placed the subject tire in the stream of commerce.

4.4   The subject tire intended to and did end up in Texas.

4.5   The subject accident occurred in Texas.

4.6   Defendant MNA places tires into the stream of commerce.

4.7   Defendant MNA knows its tires will reach Texas.

4.8   Defendant MNA serves the Texas tire market.

4.9   Defendant MNA conducts business in Texas.

4.10   Defendant MNA has employees who live in Texas.

4.11   Defendant MNA owns property in Texas.

4.12   Defendant MNA pays taxes in Texas.

4.13   Defendant MNA has authorized tire dealers located in Texas.

4.14   Defendant MNA's authorized tire dealers located in Texas sell MNA tires to Texas customers.

4.15   Defendant MNA has authorized tire distributors located in Texas.

4.16   Defendant MNA's authorized tire distributors located in Texas sell MNA tires to Texas customers.

4.17   Defendant MNA advertises its tires in Texas.

4.18   Defendant MNA advertised in Texas from 2001 through 2017.

4.19   Defendant MNA markets its tires in Texas through authorized tire distributors.

4.20   Defendant MNA markets its tires in Texas through authorized tire dealers.

4.21   Defendant MNA marketed its tires in Texas through authorized tire distributors from 2001 through 2017.

4.22   Defendant MNA marketed its tires in Texas through authorized tire dealers from 2001 through 2017.

4.23   Defendant MNA provides warranties for its tires in Texas.

4.24   Defendant MNA provided warranties for its tires in Texas from 2001 through 2017.

4.25   Defendant MNA provides warranties for its Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas.

4.26   Defendant MNA provided warranties for its Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas from 2001 through 2017.

4.27   Defendant MNA sells Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas.

4.28   Defendant MNA sold Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas from 2001 through 2017.

4.29   Defendant MNA delivers Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas to its authorized tire distributors in Texas.

4.30   Defendant MNA delivers Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas to its authorized tire dealers in Texas.

4.31   Defendant MNA delivered Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas to its authorized tire distributors in Texas from 2001 through 2017.

4.32   Defendant MNA delivered Michelin LTX M/S (MTD) LT 285/75R16 model tires in Texas to its authorized tire dealers in Texas from 2001 through 2017.

4.33   Michelin LTX M/S (MTD) LT 285/75R16 model tires are sold in Texas.

4.34   Michelin LTX M/S (MTD) LT 285/75R16 model tires were sold in Texas from 2001 through 2017.

4.35   Defendant MNA sold the defective Michelin LTX M/S (MTD) LT 285/75R16 tire, bearing DOT # B7KC PAMX 1704, at issue in this cause of action, new and in the State of Texas.

4.36   Defendant MNA sold the subject tire that suffered the catastrophic tread belt separation, the Michelin LTX M/S (MTD) LT 285/75R16 tire, bearing DOT # B7KC PAMX 1704, in the State of Texas.

4.37   Defendant MNA sold the defective Michelin LTX M/S (MTD) LT 285/75R16 tire, bearing DOT # B7KC PAMX 1704, at issue in this cause of action in the State of Texas, and said tire was purchased in the State of Texas.

4.38   Defendant MNA sold the defective subject tire that suffered the catastrophic tread belt separation, the Michelin LTX M/S (MTD) LT 285/75R16 tire, bearing DOT # B7KC PAMX 1704, in the State of Texas, and said tire was purchased in the State of Texas.

4.39   Defendant MNA marketed, intended to, and sold the defective subject tire that suffered the catastrophic tread belt separation, the Michelin LTX M/S (MTD) LT 285/75R16 tire, bearing DOT # B7KC PAMX 1704, in the State of Texas, and said tire was purchased in the State of Texas.

4.40   Defendant MNA from 2001 to 2017 has invoked jurisdiction of Texas courts.

4.41   Defendant MNA from 2001 to 2017 has invoked the jurisdiction of federal courts in Texas.

4.42   Defendant MNA from 2001 to 2017 has filed suit in Texas courts.

4.43   Defendant MNA from 2001 to 2017 has removed suits to federal courts in Texas.

4.44   Defendant MNA from 2001 to 2017 has filed court papers asserting that federal courts in Texas have jurisdiction over cases in which MNA was a party.

4.45   Defendant MNA from 2001 to 2017 has moved to transfer suits to courts in Texas.

4.46   Defendant MNA from 2001 to 2017 has filed papers asserting that transferee courts in Texas had jurisdiction over cases in which Michelin was a party.

4.47   Defendant MNA from 2001 to 2017 has filed petitions or appeals seeking review or relief from Texas appellate courts.

4.48   Defendant MNA from 2001 to 2017 has filed court papers asserting that Texas appellate courts had jurisdiction over cases in which MNA was a party.

4.49   Defendant MNA from 2001 to 2017 has answered lawsuits filed in Texas courts without contesting personal jurisdiction.

4.50   Defendant MNA is currently involved in litigation other than this case pending in Texas courts.

4.51   Defendant MNA is currently in litigation in Texas answering claims asserting the failure of MNA products in Texas where MNA has not raised any challenge to the Texas's court's personal jurisdiction over MNA in that pending litigation.

4.52   Defendant MNA has been haled into court in Texas to answer claims asserting the failure of MNA products in Texas without raising any challenge to Texas's personal jurisdiction over MNA.

4.53   Defendant MNA gathers data in Texas to monitor its tires performance in the State of Texas.

4.54   Defendant MNA is registered to do business in Texas and has a registered agent for service of legal process in Texas.

4.55   Defendant MNA holds trademarks that it enforces in Texas.

4.56   Defendant MNA has contractual agreements with Texas companies to use MNA's trademarks in Texas.

4.57   Defendant MNA offers services to help dealers located in Texas.

4.58   Defendant MNA helps dealers located in Texas develop their own public Internet websites.

4.59   Defendant MNA allows Texas dealers to subscribe to content about MNA products for use on their websites.

4.60   Defendant MNA has disseminated safety recall information through its dealers located in Texas.

4.61   Defendant MNA owns the website, www.michelinman.com.

4.62   Defendant MNA has ultimate control and authority of its website, www.michelinman.com.

4.63   Defendant MNA's website, www.michelinman.com, is accessible in Texas.

4.64   Defendant MNA has disseminated safety recall information through its website, www.michelinman.com, accessible in Texas.

4.65   Defendant MNA sends notices to (Texas) consumers who have registered their tires outside of MNA's website.

4.66   Defendant MNA's website, www.michelinman.com (accessible in Texas), has a link describing tires subject to recall.

4.67   Defendant MNA's website, www.michelinman.com (accessible in Texas), has a link through which (Texas) consumers may locate a tire dealer.

4.68   Defendant MNA's website, www.michelinman.com (accessible in Texas), has a link through which (Texas) consumers may locate replacement MNA tires.

4.69   Defendant MNA has issued technical service bulletins to Texas dealers.

4.70   Defendant MNA has issued technical service bulletins to Texas dealers on a variety of subjects.

4.71   Defendant MNA's website, www.michelinman.com (accessible in Texas), has information where Texas consumers can learn about Texas tire dealers that sell MNA tires.

## V.   JURISDICTION AND VENUE

5.1   This Court has subject matter jurisdiction over this case as the suit involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.00 pursuant to the United States Code, section 1332(a)

5.2   The jurisdictional facts stated above in Section 4 are incorporated herein by reference as if fully set forth.  By such acts, specifically, the acts enumerated in Paragraphs 4.1 – 4.71, Defendant MNA has conducted business systematically and continuously in the State of Texas for years, and has structured its business dealings with the State of Texas such that Defendant MNA is "essentially at home" in Texas, and is thus subject to general jurisdiction in Texas.

5.3     The jurisdictional facts stated above in Section 4 are incorporated herein by reference as if fully set forth.  By such acts, specifically, the acts enumerated in Paragraphs 4.1 – 4.71, Defendant MNA has conducted business systematically and continuously in the State of Texas for years, and has served the Texas tire market by marketing, distributing, and servicing the Texas market place.  Furthermore, Defendant MNA placed the subject tire into the stream of commerce. Defendant MNA engaged in substantial, systematic, and continuous contacts with Texas, as a market for its tires, and placed the subject tire into the stream of commerce, and is thus subject to specific jurisdiction in Texas under the "stream of commerce plus" test.

## VI.     FACTS

6.1     On or about July 11, 2015, Sanford Keith Amey was the driver of a 2001 Ford F250 bearing VIN# 1FTNW21F61EC39818. Regina Carter-Amey was travelling with him in the passenger seat.

6.2     All occupants were belted.  The vehicle was travelling northbound on US 77 near mile FM 455 in Victoria County, Texas when suddenly and without warning the tread separated from the vehicle's left front tire causing the vehicle to lose control and catastrophically rollover. Sandford Keith Amey sustained severe and permanently disabling injuries.  Regina Carter-Amey sustained severe and permanently disabling injuries.

6.3     The subject tire that suffered the catastrophic tread belt separation was a Michelin LTX M/S (MTD) LT 285/75R16 tire, bearing DOT # B7KC PAMX 1704, designed, manufactured, marketed by Defendant MNA and intended to and was sold in the State of Texas. This event was foreseeable to Defendant MNA.  Due to Defendant's

actions, Plaintiffs herein sustained serious bodily injuries and damages.  The injuries were the direct, producing, and proximate result of the tire's tread/belt separation and the negligence of the Defendant.

## VII.   CAUSES OF ACTION AGAINST MNA

A. STRICT PRODUCT LIABILITY

7.1   The tire in question, a Michelin LTX M/S (MTD) LT 285/75R16, was originally designed, manufactured, sold and/or placed into the stream of commerce by Defendant MNA with the intent to be sold in the Texas market, wherein it was sold in the State of Texas.

7.2   At the time of the sale of the tire in question, Defendant MNA was in the business of designing, manufacturing, and selling automotive tires such as the tire in question.

7.3   The subject MNA tire which caused the severe injuries and damages of Plaintiffs was defectively designed, manufactured and marketed by Defendant MNA and unreasonably dangerous, defective, and otherwise unsafe for its intended purpose at the time it left the control of Defendant MNA and at the time it was sold.  Such defects were a producing and proximate cause of the incident made the basis of this suit and the severe injuries and damages sustained by Plaintiffs.

7.4   At the time the tire in question was designed, manufactured, sold and/or placed into the stream of commerce by Defendant MNA, said tire was defective and unreasonably dangerous in its design, marketing and manufacture.  The tire in question failed during its useful tread life as a result of a separation of the tread and upper steel belt structure of the tire from its lower belt and carcass.  The separation resulted from

manufacturing and design defects.  Such defects include processing marks. The tire in question further has trapped air, which is a manufacturing defect.   Other manufacturing defects include gapped splices, wandering belt step-offs, belt edge wire breakups, bare wires, dog-eared splices and other belt anomalies.  The tire also suffers from premature oxidation and improper bonding of the materials resulting from design and/or manufacturing defects.  These defects resulted in the subject tread/belt separation, the accident and Plaintiffs' injuries and damages.   The tire in question tire failed after low service mileage during its original tread life as a result of a complete separation of the tread and upper steel belt structure of the tire from its carcass.  Separation resulted from manufacturing and design defects, including areas in which the tire materials did not have the necessary bond strength to withstand normal use. The tire in question contained an inadequate inner liner, poor belt cable spacing, poor joints, inadequate aging resistance and improper antidegradants, one or all of which permitted premature deterioration of the internal structure.  These defective and unreasonably dangerous conditions were a producing cause of the accident made the basis of this suit (i.e., tread belt separation and resulting loss of vehicle control) and the Plaintiffs' injuries and damages.

7.5   The defective and unreasonably dangerous conditions of the tire were a producing cause of the incident made the basis of this suit, and the injuries and damages sustained by the Plaintiffs.

7.6   Aside from normal wear and tear, the subject tire was in the same defective condition at the time of the incident as it was when it left the hands of MNA.

7.7     The subject tire was expected to and in fact reached the user or consumer without substantial change in the condition in which it was sold.

7.8     Technologically and economically feasible safer alternative designs existed that would have prevented or significantly reduced the risk of injury without substantially impairing the utility of the product.  These safer alternative designs were economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge.  These safer alternative designs include, but are not limited to, the use of nylon overlays, cap plies, proper use of gum strips or wedges, proper anti-degradants, proper inner liners, and other tire aging and separation countermeasures.

7.9     There were defects in the marketing of the tire at the time it left possession of Defendant MNA that were a producing cause of the occurrence, injuries and/or Plaintiffs' damages.

7.10    Defendant MNA failed to give adequate warnings of the dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the subject tire unreasonably dangerous as marketed.

7.11    Defendant MNA additionally failed to give adequate warnings with regard to the dangers of tire aging that were known, or by the application of reasonably developed human skill and foresight should have been known by MNA.  Defendant MNA failed to give adequate instructions/warnings to avoid such dangers, which failure rendered the tire unreasonably dangerous as marketed.

7.12 Defendant MNA failed to give warnings and instructions in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the tire's use, and the content of the warnings and instructions was not comprehensible to the average user and does not convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

### B. NEGLIGENCE

7.13 At all times relative to the Petition, Defendant MNA was in the business of supplying automobile tires for use on the public roadways. Defendant MNA held itself out as having special expertise in the industry. As such, Defendant MNA owed Plaintiffs a duty to use reasonable care in the design, manufacture, preparation, testing, instructing and warnings surrounding the subject tire. MNA violated this duty by supplying a tire and components that were defective.

7.14 Defendant MNA committed acts of omission and commission, which collectively and severally constituted negligence. These acts of negligence by MNA were a proximate and producing cause of the crash, and the injuries and damages of Plaintiffs.

## VIII. INADEQUATE STANDARDS

8.1 Applicable mandatory safety standards, if any, were inadequate to protect the public from unreasonable risks of injury or damage and Defendant MNA has withheld or misrepresented information or material relevant to the government's or agency's determination of adequacy of the safety standards or regulations at issue in this action.

## IX.   DAMAGES

9.1   As a producing, direct and proximate result of the incident, injuries, and damages for which the Defendant is liable, Plaintiffs seek and are entitled to general, special, economic and noneconomic damages in an amount in excess of the minimum jurisdictional limits of the court, as determined to be just and fair by the jury. Such damages include, but are not necessarily limited to:

*Personal Injury Damages*

1. Physical pain and mental anguish in the past and future;
2. Disfigurement in the past and future;
3. Physical impairment in the past and future;
4. Medical care in the past and future;
5. Loss of services;
6. Loss consortium;
7. Loss of companionship; and
8. All other damages allowed by law and equity.

## X.   PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1   Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.   JURY DEMAND

11.1   Plaintiffs timely request a trial by jury and have tendered the appropriate fee.

## PRAYER

WHEREFORE, Plaintiffs pray that Defendant be cited to appear and answer herein, as the law directs, and that upon final hearing thereof, Plaintiffs have and recover judgment from the Defendant for damages in such amounts as the evidence may show proper at the time of the trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate allowed by law, costs of court, attorneys

fees, and for such other and further relief both general and special, at law or in equity, to which Plaintiffs may be justly entitled.

                Respectfully submitted,

By:   /s/ *David E. Harris*
       David E. Harris
       State Bar No. 24049273
       Federal I.D. No. 712461
       Email: dharris@shhblaw.com
       SICO HOELSCHER HARRIS & BRAUGH LLP
       802 N. Carancahua, Suite 900
       Corpus Christi, Texas 78401
       Phone: 361-653-3300
       Fax: 361-653-3333
       **ATTORNEYS FOR PLAINTIFFS**